## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

Elizabeth U. Witmer, Esquire
James G. Rosenberg, Esquire
Jennifer B. Bonniwell, Esquire
Sean T. O'Neill, Esquire
Attorney I.D. Nos. 55808, 16915, 93516 &
205595
SAUL EWING LLP
1200 Liberty Ridge, Suite 200
Wayne, PA 19087-5569
610-251-5050

*Attorneys for Plaintiff Transcontinental Gas*
*Pipe Line Company, LLC*

TRANSCONTINENTAL GAS PIPE LINE
COMPANY, LLC,
2800 Post Oak Boulevard
Houston, Texas 77251-1396

                      Plaintiff,

     v.

A PERMANENT EASEMENT FOR 0.018
ACRES AND A TEMPORARY
EASEMENT FOR 0.017 ACRES OF LAND
IN EAST CALN TOWNSHIP, CHESTER
COUNTY, PENNSYLVANIA, TAX
PARCEL NO. 40-01-0006
333 Norwood Drive
Downingtown, Pa. 19335,

FRIGYES & MARIA ALEJNIKOV
333 Norwood Drive
Downingtown, Pa. 19335,

A PERMANENT EASEMENT FOR 0.019
ACRES AND A TEMPORARY
EASEMENT FOR 0.021 ACRES OF LAND
IN EAST CALN TOWNSHIP, CHESTER
COUNTY, PENNSYLVANIA, TAX
PARCEL NO. 40-01-0006.020
335 Norwood Drive
Downingtown, Pa. 19335,

DAVID M. & ANNA A. JONES
335 Norwood Drive

Action No. 09-CV-01385

**MEMORANDUM OF LAW
IN SUPPORT OF
PLAINTIFF'S OMNIBUS MOTION FOR
PRELIMINARY
INJUNCTION SEEKING
POSSESSION OF RIGHTS
OF WAY BY JUNE 1, 2009
PURSUANT TO THE
NATURAL GAS ACT AND
FED. R. CIV. P. 71.1 AND 65**

Downingtown, Pa. 19335,                          :
                                                 :
NORTH AMERICAN MORTGAGE CO.                      :
1945 Old Gallows Rd.                             :
Ste. 500                                         :
Vienna, VA 22182-3931                            :
                                                 :
WELLS FARGO HOME MORTGAGE,                       :
INC.                                             :
5024 Parkway Plaza                               :
Bldg. 7                                          :
Charlotte, NC 28217-0000                         :
                                                 :
WELLS FARGO BANK                                 :
11601 N. Black Canyon Hwy.                       :
Phoenix, AZ 85029                                :
                                                 :
A PERMANENT EASEMENT FOR 0.160                   :
ACRES AND A TEMPORARY                            :
EASEMENT FOR 0.210 ACRES OF LAND                 :
IN EAST CALN TOWNSHIP, CHESTER                   :
COUNTY, PENNSYLVANIA, TAX                        :
PARCEL NO. 40-01-0006.010                        :
331 Norwood Drive                                :
Downingtown, Pa.  19335                          :
                                                 :
STEVE & LYNDA K. FARRELL                         :
331 Norwood Drive                                :
Downingtown, Pa.  19335                          :
                                                 :
NATIONAL CITY MORTGAGE CO.                       :
c/o Corporation Service Company                  :
2704 Commerce Drive                              :
Suite B                                          :
Harrisburg, PA 17110                             :
                                                 :
MERRILL LYNCH CREDIT CORP.                       :
5201 Gate Parkway                                :
Jacksonville, FL 32256                           :
                                                 :
AND ALL UNKNOWN OWNERS AND                       :
INTERESTED PARTIES,
                              Defendants.

---

                                                 :
TRANSCONTINENTAL GAS PIPE LINE                   :

COMPANY, LLC,                              :
2800 Post Oak Boulevard                   :          Action No. 09CV01387
Houston, Texas 77251-1396                 :
                Plaintiff,          :
      v.                                  :
                             :

A PERMANENT EASEMENT FOR 0.011            :
ACRES OF LAND IN WEST WHITELAND           :
TOWNSHIP, CHESTER COUNTY,                 :
PENNSYLVANIA, TAX PARCEL NO. 41-          :
05-0299                                   :
310 Long Ridge Lane                       :
Exton, Pa. 19341                          :

GARY W. AND SANDI WASSERMAN               :
CESKA                                     :
310 Long Ridge Lane                       :
Exton, Pa. 19341                          :

CHASE MANHATTAN MORTGAGE                  :
CORPORATION                               :
343 Thornall Street                       :
Edison, NJ  08837                         :
                             :

AND ALL UNKNOWN OWNERS AND                :
INTERESTED PARTIES,                       ::
                Defendants.           ::
_____   ::

TRANSCONTINENTAL GAS PIPE LINE            :
COMPANY, LLC,                             :
2800 Post Oak Boulevard                   :          Action No. 09CV01388
Houston, Texas 77251-1396                 :
                Plaintiff,          :
      v.                                  :
                             :

A PERMANENT EASEMENT FOR 0.070            :
ACRES AND TEMPORARY EASEMENTS             :
FOR 1.033 ACRES OF LAND IN EAST           :
CALN TOWNSHIP, CHESTER COUNTY,            :
PENNSYLVANIA, TAX PARCEL NO. 40-          :
01-0002-E,                                :
121 N. Walnut Street,                     :
Suite 200                                 :
West Chester, Pennsylvania 19380          :
_____   :

COUNTY OF CHESTER (STRUBLE
TRAIL)
121 N. Walnut Street,
Suite 200
West Chester, Pennsylvania 19380

AND ALL UNKNOWN OWNERS AND
INTERESTED PARTIES,

                    Defendants.

            :
            :
            :

TRANSCONTINENTAL GAS PIPE LINE
COMPANY, LLC,
2800 Post Oak Boulevard
Houston, Texas 77251-1396

                    Plaintiff,

        v.

                Action No. 09CV01389

A TEMPORARY EASEMENT FOR 0.067
ACRES OF LAND IN WEST WHITELAND
TOWNSHIP, CHESTER COUNTY,
PENNSYLVANIA, TAX PARCEL NO. 41-
02-0394
413 Bowen Drive
Exton, Pennsylvania 19341

ELEAS A. & ROSALIND W. COZANITIS
1774 NE 20th Street
Fort Lauderdale, Florida  33305

AND ALL UNKNOWN OWNERS AND
INTERESTED PARTIES,

                    Defendants.

TRANSCONTINENTAL GAS PIPE LINE
COMPANY, LLC,
2800 Post Oak Boulevard
Houston, Texas 77251-1396

                    Plaintiff,

        v.

                Action No. 09CV01391

A PERMANENT EASEMENT FOR 0.244
ACRES AND TEMPORARY EASEMENTS
FOR 0.980 ACRES OF LAND IN WEST

WHITELAND TOWNSHIP, CHESTER                :
COUNTY, PENNSYLVANIA, TAX                   :
PARCEL NO. 41-02-0072                        :
201 Sunrise Boulevard                         :
Exton, Pennsylvania 19341                      :
                                              :
DAYTON HUDSON CORP (TARGET),               :
1000 Nicollet Mall                             :
TPM 12H                                       :
Minneapolis, Minnesota 55403                    :
                                              :
OLIVER P. MACKINNON                         :
87 White Oak Road,                             :
Fairfield, Connecticutt 06430                    :
                                              :
AND ALL UNKNOWN OWNERS AND                :
INTERESTED PARTIES,                          :
                          Defendants.         :
                                              :

---

                                              :
TRANSCONTINENTAL GAS PIPE LINE             :
COMPANY, LLC,                                :
2800 Post Oak Boulevard                        :         Action No. 09CV01392
Houston, Texas 77251-1396                      :
                          Plaintiff,          :
                                              :
          v.                                 :
                                              :
A PERMANENT EASEMENT FOR 0.022             :
ACRES OF LAND IN WEST WHITELAND            :
TOWNSHIP, CHESTER COUNTY,                   :
PENNSYLVANIA, TAX PARCEL NO. 41-           :
4D-0034                                       :
361 S. Balderston Drive                        :
Exton, Pennsylvania 19341                      :
                                              :
KAREN L. & THOMAS P. DEGARMO, SR.          :
361 S. Balderston Drive                        :
Exton, Pennsylvania 19341                      :
                                              :
PHILADELPHIA MORTGAGE                       :
CORPORATION                                  :
527 E. Lancaster Ave.                          :
Wayne, Pennsylvania 19087                      :
                                              :
AND ALL UNKNOWN OWNERS AND                :

---

INTERESTED PARTIES,                           :
                            Defendants.        :
                                              :
                                              :
_____               :

TRANSCONTINENTAL GAS PIPE LINE                 :
COMPANY, LLC,                                  :
2800 Post Oak Boulevard                        :          Action No. 09CV01393
Houston, Texas 77251-1396                      :
                            Plaintiff,         :
             v.                                :
                                              :
A TEMPORARY EASEMENT FOR 0.003                 :
ACRES OF LAND IN EAST CALN                     :
TOWNSHIP, CHESTER COUNTY,                      :
PENNSYLVANIA, TAX PARCEL NO. 40-               :
01-0025.040                                    :
340 Norwood Road                               :
Downingtown, Pennsylvania 19335                :
                                              :
JOSEPH & DYANNE DELANEY                        :
340 Norwood Road                               :
Downingtown, Pennsylvania 19335                :
                                              :
AND ALL UNKNOWN OWNERS AND                     :
INTERESTED PARTIES,                            :
                            Defendants.        :
                                              :
_____               :

TRANSCONTINENTAL GAS PIPE LINE                 :
COMPANY, LLC,                                  :
2800 Post Oak Boulevard                        :          Action No. 09CV01394
Houston, Texas 77251-1396                      :
                            Plaintiff,         :
             v.                                :
                                              :
A PERMANENT EASEMENT FOR 0.034                 :
ACRES AND A TEMPORARY                          :
EASEMENT FOR 0.109 ACRES OF LAND               :
IN WEST WHITELAND TOWNSHIP,                    :
CHESTER COUNTY, PENNSYLVANIA,                  :
TAX PARCEL NO. 41-02-0398                      :
405 Bowen Drive                                :
Exton, Pennsylvania 19341                      :

LAMAAT M. SHALABY & MAGID ABOU     :
GHARBIA                             :
405 Bowen Drive                     :
Exton, Pennsylvania 19341           :
                                    :
MORTGAGE ELECTRONIC                 :
REGISTRATION SYSTEM, INC.,          :
NOMINEE FOR ARLINGTON CAPITAL       :
MORTGAGE CORP.                      :
3260 Tillman Dr., Suite 90          :
Bensalem, Pennsylvania19020         :
                                    :
PNC BANK, NATIONAL ASSOCIATION      :
2730 Liberty Ave.                   :
Pittsburgh, Pennsylvania 15222      :
                                    :
AND ALL UNKNOWN OWNERS AND          :
INTERESTED PARTIES,                 :
           Defendants.   :
                                    :
_____     :
                                    :
TRANSCONTINENTAL GAS PIPE LINE      :
COMPANY, LLC,                       :
2800 Post Oak Boulevard,            :
Houston, Texas 77251-1396           :          Action No. 09CV01395
           Plaintiff,   :
    v.                         :
                                    :
A PERMANENT EASEMENT FOR 0.119      :
ACRES AND TEMPORARY                 :
EASEMENTS FOR 0.126 ACRES OF        :
LAND IN WEST WHITELAND              :
TOWNSHIP, CHESTER COUNTY,           :
PENNSYLVANIA, TAX PARCEL NO. 41-    :
04-0013,                            :
580 Whitford Hills Road,            :
Exton, PA 19341                     :
                                    :
ERIN AND MICHAEL HEILIG,            :
580 Whitford Hills Road,            :
Exton, PA 19341                     :
                                    :
WELLS FARGO BANK,                   :
2704 Commerce Drive, Suite B,       :
Harrisburg, PA 17110,               :

WACHOVIA BANK,                                    :
2704 Commerce Drive, Suite B,                     :
Harrisburg, PA 17110,                             :
                                                  :
                                                  :
A PERMANENT EASEMENT FOR 0.063                    :
ACRES OF LAND IN WEST                             :
WHITELAND TOWNSHIP, CHESTER                       :
COUNTY, PENNSYLVANIA, TAX                         :
PARCEL NO. 41-04-0013.020,                        :
578 Whitford Hills Road,                          :
Exton, PA 19341                                   :
                                                  :
                                                  :
HENRY J. & MARGARET MCHUGH,                       :
578 Whitford Hills Road,                          :
Exton, PA 19341                                   :
                                                  :
                                                  :
DECISION WELLS FARGO HOME                         :
MORTGAGE, INC.,                                   :
1595 Spruce Street,                               :
Riverside, CA 92507                               :
                                                  :
                                                  :
PNC BANK,                                         :
2730 Liberty Avenue,                              :
Pittsburgh, PA 15222,                             :
                                                  :
                                                  :
PERMANENT EASEMENTS OVER A 12-                    :
FOOT SHARED DRIVEWAY IN WEST                      :
WHITELAND TOWNSHIP, CHESTER                       :
COUNTY, PENNSYLVANIA, TAX                         :
PARCEL NO. 41-04-0016.01A,                        :
570 Whitford Hills Road                           :
Exton, Pa. 19341                                  :
                                                  :
                                                  :
and ALL UNKNOWN OWNERS AND                        :
INTERESTED PARTIES,                               :
                    Defendants.                   :
                                                  :

---

TRANSCONTINENTAL GAS PIPE LINE                    :
COMPANY, LLC,                                     :
2800 Post Oak Boulevard                           :          Action No. 09CV01396
Houston, Texas 77251-1396                         :
                    Plaintiff,                    :
          v.                                      :
                                                  :

A PERMANENT EASEMENT FOR 0.426      :
ACRES AND TEMPORARY EASEMENTS       :
FOR 0.882 ACRES OF LAND IN EAST     :
CALN TOWNSHIP, CHESTER COUNTY,      :
PENNSYLVANIA, TAX PARCEL NOS.       :
40-01-0003 AND 40-01-0007.4         :
325 Norwood Road                    :
Downingtown, Pennsylvania 19335     :
                                    :
EDWARD E. & CAROLE H. KIRKBRIDE     :
Bellingman L108                     :
1615 East Boot Road                 :
West Chester, Pennsylvania 19380    :
                                    :
TD BANKNORTH/MERS                   :
32 Chestnut Street                  :
Lewiston, Maine 04240               :
                                    :
AND ALL UNKNOWN OWNERS AND          :
INTERESTED PARTIES,                 :
                   Defendants.      :
                                    :
                                    :

TRANSCONTINENTAL GAS PIPE LINE      :
COMPANY, LLC,                       :
2800 Post Oak Boulevard             :          Action No. 09CV01397
Houston, Texas 77251-1396           :
                   Plaintiff,       :
      v.                            :
                                    :
A PERMANENT EASEMENT FOR 0.203      :
ACRES AND TEMPORARY EASEMENTS       :
FOR 0.797 ACRES OF LAND IN EAST     :
BRANDYWINE TOWNSHIP, CHESTER        :
COUNTY, PENNSYLVANIA, TAX           :
PARCEL NO. 30-06-0078,              :
301 Creek Road,                     :
Downingtown, PA 19335               :
                                    :
WILLIAM F. MCQUEEN,                 :
314 Creek Road,                     :
Downingtown, PA 19335               :
                                    :
CORESTATES BANK,                    :
Broad and Chestnut Streets,         :

Philadelphia, PA 19107, and                    :
50 West Market Street,                         :
West Chester, PA 19382                         :
                                               :
PHILADELPHIA NATIONAL BANK,                    :
1500 Market Street                             :
Philadelphia, PA 19102,                        :
                                               :
FIRST UNION NATIONAL BANK,                     :
123 South Broad Street,                        :
Philadelphia, PA 19109                         :
                                               :
WILMINGTON TRUST OF                            :
PENNSYLVANIA,                                  :
797 East Lancaster Avenue,                     :
Villanova, PA 19085                            :
                                               :
and ALL UNKNOWN OWNERS AND                     :
INTERESTED PARTIES,                            :
                        Defendants.            :
                                               :
_____               :

                                               :
TRANSCONTINENTAL GAS PIPE LINE                 :
COMPANY, LLC,                                  :
2800 Post Oak Boulevard                        :          Action No.  09CV1398
Houston, Texas 77251-1396                      :
                        Plaintiff,             :
        v.                                     :
                                               :
A PERMANENT EASEMENT FOR 0.013                 :
ACRES AND A TEMPORARY                          :
EASEMENT FOR 0.004 ACRES OF LAND               :
IN WEST WHITELAND TOWNSHIP,                    :
CHESTER COUNTY, PENNSYLVANIA,                  :
TAX PARCEL NO. 41-04-0021.01,                  :
526 Whitford Hills Road,                       :
Exton, PA 19341                                :
                                               :
HARRY D. MILLER, III,                          :
526 Whitford Hills Road,                       :
Exton, PA 19341                                :
                                               :
WILLOW FINANCIAL BANK,                         :
170 S. Warner Road,                            :

Wayne, PA 19087-2121                              :
                                                  :
and ALL UNKNOWN OWNERS AND                        :
INTERESTED PARTIES,                               :
                              Defendants.         :
                                                  :
                                                  :
_____          :

                                                  :
TRANSCONTINENTAL GAS PIPE LINE                    :
COMPANY, LLC,                                     :
2800 Post Oak Boulevard                           :        Action No. 09CV01399
Houston, Texas 77251-1396                         :
                              Plaintiff,          :
                                                  :
            v.                                    :
                                                  :
A PERMANENT EASEMENT FOR 0.087                    :
ACRES AND TEMPORARY EASEMENTS                     :
FOR 0.025 ACRES OF LAND IN WEST                   :
WHITELAND TOWNSHIP, CHESTER                       :
COUNTY, PENNSYLVANIA, TAX                         :
PARCEL NO. 41-4D-0012,                            :
334 S. Balderston Drive                           :
Exton, PA 19341                                   :
                                                  :
ANDREW J. & KATHLEEN MOODY,                       :
334 S. Balderston Drive                           :
Exton, PA 19341                                   :
                                                  :
WELLS FARGO HOME MORTGAGE,                        :
INC.,                                             :
2704 Commerce Drive, Suite B, Harrisburg,         :
PA 17110-9380,                                    :
                                                  :
WELLS FARGO BANK, N.A.,                           :
2704 Commerce Drive, Suite B, Harrisburg,         :
PA 17110-9380,                                    :
                                                  :
and ALL UNKNOWN OWNERS AND                        :
INTERESTED PARTIES,                               :
                              Defendants.         :
                                                  :
                                                  :
_____          :

                                                  :
TRANSCONTINENTAL GAS PIPE LINE                    :
COMPANY, LLC,                                     :

2800 Post Oak Boulevard                        :       Action No. 09CV01400
Houston, Texas 77251-1396                      :
                        Plaintiff,             :

                v.                             :
                                               :
A PERMANENT EASEMENT FOR 0.001                 :
ACRES AND A TEMPORARY                          :
EASEMENT FOR 0.133 ACRES OF LAND               :
IN WEST WHITELAND TOWNSHIP,                    :
CHESTER COUNTY, PENNSYLVANIA,                  :
TAX PARCEL NO. 41-4D-0011,                     :
332 S. Balderston Drive,                       :
Exton, PA 19341                                :

ALFRED T. & CARMEN C. MYLES,                   :
332 S. Balderston Drive,                       :
Exton, PA 19341                                :
                                               :
EQUITY BANK,                                   :
15 E. Gay Street,                              :
West Chester, PA 19381                         :
                                               :
and ALL UNKNOWN OWNERS AND                     :
INTERESTED PARTIES,                            :
                        Defendants.            :
                                               :
                                               :

_____

TRANSCONTINENTAL GAS PIPE LINE                 :
COMPANY, LLC,                                  :
2800 Post Oak Boulevard                        :       Action No. 09CV01413
Houston, Texas 77251-1396                      :
                        Plaintiff,             :

                v.                             :
                                               :
A PERMANENT EASEMENT FOR 0.325                 :
ACRES AND TEMPORARY EASEMENTS                  :
FOR 1.054 ACRES OF LAND IN WEST                :
WHITELAND TOWNSHIP, CHESTER                    :
COUNTY, PENNSYLVANIA, TAX                      :
PARCEL NOS. 41-02-0035.010 AND 41-02-          :
0035.01A                                       :
Whiteland West Apartments                      :
218 A Apple Drive                              :
Exton, Pennsylvania 19341                      :

1148425.3 4/2/09                          xii

PANONIA ASSOCIATES                          :
618 Moore Road, Suite 320                   :
King of Prussia, Pa. 19406                  :
                                            :
AND ALL UNKNOWN OWNERS AND                  :
INTERESTED PARTIES,                         :
                                            :
                        Defendants.         :
                                            :
_____   :
                                            :
TRANSCONTINENTAL GAS PIPE LINE              :
COMPANY, LLC,                               :
2800 Post Oak Boulevard                     :          Action No. 09CV01401
Houston, Texas 77251-1396                   :
                        Plaintiff,          :
                                            :
        v.                                  :
                                            :
A PERMANENT EASEMENT FOR 0.014              :
ACRES AND A TEMPORARY                        :
EASEMENT FOR 0.056 ACRES OF LAND            :
IN WEST WHITELAND TOWNSHIP,                 :
CHESTER COUNTY, PENNSYLVANIA,               :
TAX PARCEL NO. 41-02-0072.010,              :
347 N. Pottstown Pike,                      :
Exton, PA 19341                             :
                                            :
RP INVESTORS-EXTON, INC.,                   :
347 N. Pottstown Pike,                      :
Exton, PA 19341                             :
                                            :
NATIONAL BANK OF BOYERTOWN,                 :
Philadelphia & Reading Avenues,             :
Boyertown, PA 19512                         :
                                            :
and ALL UNKNOWN OWNERS AND                  :
INTERESTED PARTIES,                         :
                        Defendants.         :
                                            :
_____   :
                                            :
TRANSCONTINENTAL GAS PIPE LINE              :
COMPANY, LLC,                               :
2800 Post Oak Boulevard                     :          Action No. 09CV1402
Houston, Texas 77251-1396                   :
                        Plaintiff,          :

v.                                                :
                                                  :
A PERMANENT EASEMENT FOR 0.099   :
ACRES AND A TEMPORARY            :
EASEMENT FOR 0.015 ACRES OF LAND :
IN EAST CALN TOWNSHIP, CHESTER   :
COUNTY, PENNSYLVANIA, TAX        :
PARCEL NO. 40-01-0006.030,       :
337 Norwood Drive,               :
Downingtown, PA 19335            :
                                 :
DONALD A. & LYNETTE A. WILSON,   :
337 Norwood Drive,               :
Downingtown, PA 19335            :
                                 :
and ALL UNKNOWN OWNERS AND       :
INTERESTED PARTIES,              :
                  Defendants.    :
                                 :

## TABLE OF CONTENTS

I.     Facts Regarding the Rights of Way and FERC's Order Granting Approval of Transco's Replacement Project. ...................................................................................................3

    1.   The FERC Certificate and the Downingtown Replacement. ..............................................4

    2.   The Easements Sought By Transco. ....................................................................................6

    3.   FERC Reviewed and Approved Transco's Project Plans. ...................................................8

    4.   FERC Conducted an Additional Review and Approved Site-Specific Plans for Rights of Way Within 50 Feet of a Residence. ..........................................................................10

    5.   Transco's Need for Immediate Access. .............................................................................12

    6.   Potential Harm to the Public and to Transco. ...................................................................14

    7.   Transco Will Post a $750,000 Bond to Secure Payment of Compensation. ....................17

II.    Transco Has the Right Under Section 717f(h) of the Natural Gas Act to Acquire Easements on Defendants' Properties by Condemnation. ...............................................17

III.   Landowners Are Not Permitted to Collaterally Attack the FERC Certificate. ................20

IV.    This Court is Empowered to Use Its Equitable Power to Grant Immediate Possession to Transco Under Fed. R. Civ. P. 65. .............................................................................22

V.     Transco is Entitled to a Preliminary Injunction Granting Immediate Possession to the Rights of Way. ............................................................................................................26

    1.   Transco is Likely to Succeed on the Merits. ....................................................................27

    2.   Transco Will Be Irreparably Harmed. ..............................................................................27

    3.   Defendants' Harm Can Be Remedied With Money Damages. ..........................................30

    4.   The Public Interest Supports Granting Immediate Possession. .........................................31

VI.    Conclusion. ......................................................................................................................32

## TABLE OF AUTHORITIES

### FEDERAL CASES

Allegheny Energy, Inc. v. DQE, Inc., 171 F.3d 153 (3d Cir. 1999)..............................26

Columbia Gas Transmission Corp. v. An Easement, No. 05 CV 2895, 2006 WL 401850
  (E.D. Pa. Feb. 16, 2006) ..........................................................................21, 26, 30, 31

Deckert v. Independence Shares Corp., 311 U.S. 282 (1940).....................................18

East Tennessee Natural Gas Co. v. Sage, 361 F.3d 808 (4th Cir. 2004)...............17, 22, 23, 29, 31

East Tennessee Natural Gas, LLC v. 3.62 Acres, Civ. Action No. 4:02cv00197, 2006 WL
  1453937 (W.D. Va. May 18, 2006)..................................................................24, 27

Franklin v. Gwinnett County Public School, 503 U.S. 60 (1992)................................17

Guardian Pipeline, LLC v. 295.49 Acres of Land, Nos. 08-C-0028, 08-C-54, 08-C-29,
  08-C-30, 2008 WL 1751358 (E.D. Wisc. April 11, 2008)..................................24, 25

Guardian Pipeline, LLC v. 950.80 Acres of Land, 210 F.Supp.2d 976 (N.D. Ill. 2002) ........24, 25

Humphries v. Williams Natural Gas Co., 48 F.Supp.2d 1276 (D. Kan. 1999) .............25

In re Permian Basin Area Rate Cases, 390 U.S. 747 (1968) ........................................19

Kansas Pipeline Co. v. 200 Foot by 250 Foot Piece of Land, 210 F. Supp.2d 1253 (D.
  Kan. 2002) ............................................................................................................20

Kern River Gas Transmission v. Clark County, Nevada, 757 F. Supp. 1110 (D. Nev.
  1990).....................................................................................................................25

Maritimes & Northeast Pipeline, L.L.C. v. 6.85 Acres of Land, 537 F. Supp.2d 223 (D.
  Me. 2008)..............................................................................................................24

Miller v. French, 530 U.S. 327 (2000) .......................................................................18

Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S. 288 (1960) ................................17

Northern Border Pipeline Co. v. 127.79 Acres of Land, 520 F. Supp. 170 (D.N.D. 1981) ..........25

Northern Border Pipeline Co. v. 64.111 Acres of Land, 125 F. Supp.2d 299 (N.D. Ill.
  2000)..............................................................................................24, 25, 27, 31

Northern Border Pipeline Co. v. 86.72 Acres of Land, 144 F.3d 469 (7th Cir. 1998).................25

Northwest Pipeline Corp. v. 20' by 1,430' Pipeline Right of Way, 197 F. Supp.2d 1241 (E.D. Wash. 2002) ................................................................................................... 24, 31

Pennsylvania Public Utility Commision v. Federal Energy Regulation Commission, 881 F.2d 1123 (D.C. Cir. 1989) ................................................................................... 19

Porter v. Warner Holding Co., 328 U.S. 395 (1946) ............................................... 17

Portland Natural Gas Transmission System v. 4.83 Acres of Land, 26 F. Supp.2d 332 (D.N.H. 1998) ....................................................................................................... 20, 25

Rivers Electric Co., Inc. v. 4.6 Acres of Land, 731 F. Supp. 83 (S.D. N.Y. 1990) ........................ 25

Roe v. Operation Rescue, 919 F. 2d 857 (3d Cir. 1990) ........................................... 17

Rogers v. Corbett, 468 F.3d 188 (3d Cir. 2006) ........................................................ 26

Southeast Supply Header, LLC v. 180 Acres, C.A. No. 2:07CV280KS-MTP, 2008 WL 160700 (S.D. Miss. Jan. 9, 2008) ......................................................................... 24

Southeast Supply Header, LLC v. 40 Acres, C.A. No. 2:07CV267KS-MTP, 2007 WL 4459092 (S.D. Miss. Dec. 14, 2007) ..................................................................... 24

Steckman Ridge GP, LLC v. An Exclusive Natural Gas Storage Easement Beneath 11.078 Acres, More or Less, Nos. 08-168, 08-169, 08-177, 08-179, 08-180, 2008 WL 4346405 (W.D. Pa.. Sept. 19, 2008) ............................................................. passim

Tacoma v. Taxpayers, 357 U.S. 320 (1958) ............................................................... 20

Tennessee Gas Pipeline Co. v. 104 Acres of Land More or Less, 749 F. Supp. 427 (D.R.I. 1990) ..................................................................................................................... 19

Tennessee Gas Pipeline Co. v. Massachusetts Bay Transportation Authority, 2 F. Supp.2d 106 (D. Mass. 1998) ................................................................................................ 20

Tennessee Gas Pipeline Co. v. New England Power, CTL, Inc., 6 F. Supp.2d 102 (D. Mass. 1998) ........................................................................................................... 25

Transwestern Pipeline Co., LLC v. 9.32 Acres, 550 F.3d 770, (9th Cir. 2008) ........................... 25

United States v. Babcock, 250 U.S. 328 (1919) ........................................................ 17

USG Pipeline Co. v. 1.74 Acres, 1 F. Supp.2d 816 (E.D. Tenn. 1998) ................... 25, 29

Vector Pipeline v. 68.55 Acres of Land, 157 F. Supp.2d 949 (N.D. Ill. 2001) ....................... 24, 25

Virginia Railway Co. v. System Federation No. 40, 300 U.S. 515 (1937) ................... 31

<u>Williams Natural Gas Co. v. City of Oklahoma City</u>, 890 F.2d 255 (10th Cir. 1989), <u>cert.</u>
    <u>den'd</u>, 497 U.S. 1003 (1990) ...............................................................................20

<u>Williston Basin Interstate Pipeline Co. v. Easement and Right of Way Across .152 Acres</u>
    <u>of Land</u>, No. A1-03-66, 2003 WL 21524816 (D.N.D. June 3, 2003) ....................24

### FEDERAL STATUTES

Federal Rule of Civil Procedure 65 ..........................................................3, 17, 21, 22, 23

Federal Rule of Civil Procedure 71.1 .....................................................................3, 23

Natural Gas Act, 15 U.S.C. § 717, *et seq.* .................................................................passim

### STATE STATUTES

Delaware Limited Liability Act.  DEL. CODE ANN. Title 6, § 18-214 *et seq.* (2009) ......................1

### OTHER AUTHORITIES

Certificate of Public Convenience and Necessity, 124 F.E.R.C. ¶61,160, Docket No. CP-
    08-31-000 (Aug. 14, 2008) ..............................................................................1, 3, 4

Environmental Assessment, Docket No. CP08-31, available at http://ferc.gov/docs-
    filing/elibrary.asp, (April 18, 2008) ....................................................................7

Federal Energy Regulatory Commission Order Denying Rehearing and Stay, 126
    F.E.R.C. ¶61,097 ................................................................7, 8, 9, 10, 11

Federal Energy Regulatory Commission Regulations, 18 C.F.R. §§ 157.1–157.218 ....................4

Notice of Environmental Assessment on April 18, 2008.  73 Fed. Reg. 22360-01, 2008
    WL 1826355 (April 18, 2008) ............................................................................7

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S OMNIBUS MOTION FOR PRELIMINARY INJUNCTION**
**SEEKING POSSESSION OF RIGHTS OF WAY BY JUNE 1, 2009**
**PURSUANT TO THE NATURAL GAS ACT AND FEDERAL RULES OF**
**CIVIL PROCEDURE 71.1 AND 65**

Plaintiff Transcontinental Gas Pipe Line Company, LLC ("Transco")[1] has operated a

natural gas pipeline from supply sources in the Southern States and the Gulf of Mexico to

customers in Pennsylvania and the Northeast since 1951. The Federal Energy Regulatory

Commission ("FERC") granted Transco a Certificate of Convenience and Public Necessity on

August 14, 2008 to allow Transco **to replace** its original 30-inch "Mainline A" pipeline with a

42-inch pipeline along a 7.15-mile stretch in Chester County, Pennsylvania (the "Downingtown

Replacement").[2] The Certificate requires Transco to put Mainline A back in service, with the

larger pipe, by November 1, 2009.

The Natural Gas Act authorizes Transco, as a holder of a FERC Certificate of Public

Convenience and Necessity, to exercise the federal power of eminent domain to acquire any

rights of way or easements that it could not obtain by agreement and that are necessary to

construct, operate and maintain the FERC-approved replacement pipeline. See 15 U.S.C.

---

[1]    As of January 1, 2009, Transco changed its name from Transcontinental Pipe Line Corporation when it filed a Certificate of Conversion pursuant to Section 18-214 of the Delaware Limited Liability Act. DEL. CODE ANN. Tit. 6, § 18-214 *et seq.* (2009)(West). The conversion into an LLC does not "affect any obligations or liabilities of [Transco] incurred prior to its conversion" and, indeed, the statute provides that "the limited liability company shall be deemed to be the same entity as the converting other entity and the conversion shall constitute a continuation of the existence of the converting other entity in the form of a domestic limited liability company." DEL. CODE ANN. Tit. 6, § 18-214(e & g).

[2]    Transcontinental Gas Pipe Line Corp., 124 F.E.R.C. ¶61,160, Docket No. CP-08-31-000 (Aug. 14, 2008). A true and correct copy is attached as Exhibit A.

§ 717f(h).  Transco filed Complaints in Condemnation against all Defendants on April 1, 2009,

pursuant to the eminent domain powers granted by the Natural Gas Act.[3]

Transco seeks a preliminary injunction for immediate access to and possession of

easements and rights of way on 20 properties (the "Rights of Way")[4] in advance of any award of

compensation.  Transco cannot wait for the conclusion of individual compensation hearings for

all Defendant landowners, which could take many months and delay the construction past the

November 1, 2009 deadline for completion.  Transco proposes to post a bond in the amount of

$1.6 million, which is more than five times the appraised value of the property rights at issue, to

secure payment of that compensation.

Transco needs to acquire permanent or temporary easements from 166 landowners, and

Transco has secured the required easements on 132 tracts to date.  The Rights of Way subject to

this Motion are limited to the 20 parcels that Transco must access by June 1, 2009 to begin

construction.[5]  Transco continues to negotiate with all landowners affected by the project.

However, without immediate access to and possession of the Rights of Way, Transco will be

unable to complete construction in time to meet the November 1, 2009 deadline set by FERC.  If

Transco fails to have the replacement pipeline in service by November 1, 2009, Transco and the

---

[3]    Transco filed 17 complaints relating to 20 Defendant landowners. Action Nos. 09-cv-1395 and 09-cv-1385 relate to multiple landowners who have shared driveways and thus hold easement interests in each others' properties.

[4]    "Rights of Way" in this brief shall mean the temporary and permanent easements on each tract necessary to construct, operate and maintain Transco's replacement pipeline in Chester County, Pennsylvania. Legal descriptions and plat plans of the property interests are contained in the appendix organized by landowner, which is attached as Exhibits O, and summarized in the spreadsheet attached as Exhibit N.

[5]    On March 12, 2009, Transco filed an Omnibus Motion Seeking Possession of Rights of Way by May 4, 2009, concerning 36 actions filed on March 10, 2009. See Action Nos. 09cv01027 through 09cv01036, 09cv01038 through 09cv057, 09cv01059 through 09cv061, 09cv01064, 09cv01066, 09cv01068 and 09cv01072. Transco needs to begin construction on the May 4 properties sooner because of environmental and technical restrictions on construction. See Affidavit of Brian O'Higgins, attached as Exhibit D, ¶49 (hereafter "O'Higgins Affidavit").

public – businesses and residences who rely on the natural gas delivered through Transco's pipeline system – will be irreparably harmed.

Transco has the substantive right to condemn the Rights of Way under the Natural Gas Act, and has filed Complaints in Condemnation under Federal Rule of Civil Procedure 71.1 for all Defendants.

Accordingly, Transco seeks an Order:[6]

(1)      Determining that Plaintiff has the substantive right to condemn the real estate of Defendants in all of the above-captioned cases under Federal Rule of Civil Procedure 65 pursuant to the Natural Gas Act, 15 U.S.C. § 717, *et seq.* and the Certificate of Public Convenience and Necessity issued by the Federal Energy Regulatory Commission, 124 F.E.R.C. ¶61,160, Docket No. CP08-31-000, dated August 14, 2008;

(2)      Granting Plaintiff access to, possession of and entry upon the Rights of Way on Defendants' real estate by June 1, 2009;

(3)      Directing Plaintiff to post a bond in the amount of $1.6 million as security for any damages Defendants may suffer and to secure payment of just compensation to all Defendants; and

(4)      Directing that Plaintiff record the Defendant-specific Orders, in the form attached as Exhibit P, in the Office of the Recorder of Deeds for Chester County, Pennsylvania.

## I.      Facts Regarding the Rights of Way and FERC's Order Granting Approval of Transco's Replacement Project.

Transco owns and operates an interstate natural gas transmission system that extends from supply sources in the Southern states and the Gulf of Mexico to customers in Pennsylvania

---

[6]      Transco has attached a proposed form of Omnibus Order, applying to all Defendants, as well as Defendant-specific proposed orders, which are attached as Exhibit P.

and the Northeast.  Transco built its first pipeline through Pennsylvania more than 50 years ago.

Transco delivers more than 28 percent of the natural gas used in Pennsylvania.  Exh. D,

O'Higgins Affidavit, ¶4.

    1.  The FERC Certificate and the Downingtown Replacement.

  On December 3, 2007, Transco filed an application under Section 7 of the Natural Gas

Act, 15 U.S.C. §717f,  and under Part 157 of the FERC's regulations, 18 C.F.R. §§ 157.1–

157.218, for a Certificate of Public Convenience and Necessity to construct and operate looping

pipeline facilities; to replace existing pipeline facilities; to abandon an existing pipeline; and to

make modifications to compressor stations and appurtenant facilities in eastern Pennsylvania and

northern New Jersey.  Exh. D, O'Higgins Affidavit, ¶14.

  On August 14, 2008, FERC issued an order granting Transco a Certificate of Public

Convenience and Necessity to construct, maintain and operate the Sentinel Expansion Pipeline

Project, Docket No. CP08-31-000 (the "FERC Certificate").  Exh. A.  By this Order, FERC

approved Transco's plans **to replace** a section of its 30-inch Mainline A pipeline in Chester

County, Pennsylvania, with a larger 42-inch pipeline (the "Downingtown Replacement").  Exh.

A, ¶6.

  This Motion concerns only properties affected by the Downingtown Replacement.  The

Downingtown Replacement will require Transco to shut down an almost 8-mile segment of its

main line transmission system that runs from supply sources in the Southern States and the Gulf

of Mexico to the Northeast.  Transco will replace a 7.15-mile section of 30-inch Mainline A pipe

– which was placed into service in 1951 – with 42-inch pipe.  The Mainline A pipeline is

generally parallel to Mainlines B and C pipelines in Chester County, Pennsylvania.  Exh. D,

O'Higgins Affidavit, ¶7.  The majority of the properties affected by this project already are

burdened by easements for Mainlines A, B and C that date to the 1950s.  Exh. D, O'Higgins

Affidavit, ¶7;  Exh. N (spreadsheet listing existing easements).

The Downingtown Replacement is only one segment of a larger project known as the

Sentinel Project (the "Project").  The first phase of the Sentinel Project was the Wind Gap Loop,

which required construction of additional pipeline capacity in Monroe and Northampton

Counties, Pennsylvania in 2008.  Exh. A, FERC Certificate, ¶5.  Phase 1 is completed.  Exh. D,

O'Higgins Affidavit, ¶9.  The Downingtown Replacement is part of Phase 2 of the Project,

which also involves the construction of additional pipeline capacity in the Conyngham Loop in

Luzerne County, Pennsylvania; the Mountain View and Turnpike Loops in Somerset and Union

Counties, New Jersey; and improvements to various compressor stations and appurtenant

facilities in Bucks and Chester Counties, Pennsylvania and Middlesex, Union, Bergen, Mercer,

Burlington Counties, New Jersey.  Exh. A, FERC Certificate, ¶6.

The Downingtown Replacement is key to the entire Sentinel Project because it is an

expansion of one of the main line pipelines that serves customers in Pennsylvania and the

Northeast, and more specifically from Transco's Pleasant Valey interconnect with Dominion

Cove Point LNG, LP.  The Sentinel Project involves installation of the Conyngham, Mountain

View and Turnpike Loops that provide additional storage capacity for customer needs.  It is the

Downingtown Replacement that allows a greater volume of natural gas to be transported through

Transco's main line and delivered to new and existing customers.  Exh. D, O'Higgins Affidavit,

¶11.

All of the existing transmission capacity in the Mainline A segment being replaced in the

Downingtown Replacement has been contracted to customers, as has the additional capacity

which is being added to Mainline A.[7]  Exh. D, O'Higgins Affidavit, ¶12.  Mainline A must be

operational or "in service" by November 1, 2009, both to continue service to the existing

customers served for the last 50 years by the original Mainline A, and to provide additional

capacity to the Project customers who have contracted for the expansion.  Exh. D, O'Higgins

Affidavit, ¶13.

2.     The Easements Sought By Transco.

This Motion seeks access to, entry on and possession of permanent and temporary

easements on 20 properties along the Downingtown Replacement that are necessary for

construction **no later than June 1, 2009.**  All of the easements sought are strips of land

alongside Transco's existing easement, and the majority of the landowners affected by the

Downingtown Replacement already have existing easements on their properties.  In total,

Transco seeks permanent rights of way on 1.928 acres of land across 18 properties.  Transco also

seeks temporary easements on 5.532 acres across 17 properties – however more than half of the

temporary easements are sought on four non-residential properties.  Transco also seeks the

removal of a restriction on pipe-size contained in existing easements on two properties.[8]  A full

listing of the property interests sought from each Defendant are set forth in the spreadsheet

attached as Exhibit N.

Transco requires permanent and temporary easements on 166 properties affected by the

Downingtown Replacement, and as of April 2, 2009, Transco had acquired the rights needed on

---

[7]     These customers are the Chesapeake Utilities Corporation – Delaware Division, Delmarva Power & Light Co., Hess Corp., PECO Energy Corp., Pivotal Utility Holdings, Inc. d/b/a Elizabethtown Gas, PSEG Power, LLC, and UGI Utilities, Inc.  Exh. A, FERC Certificate, FN3 (p.3).  Transco operates gas transmission lines, and all of Transco's customers are shippers.  Transco does not deliver gas directly to homes and businesses.

[8]     Some of the existing easements contain restrictions limiting the pipeline size to 36 inches or less.  Transco seeks the removal of these easement restrictions so that it may construct, operate and maintain the 42-inch pipeline that was approved in the FERC Certificate.

more than two-thirds of the properties (132) through voluntary negotiation. Transco made offers to each of the Defendants of more than $3,000, which have not been accepted. Even after filing this Motion, Transco continues to negotiate with landowners with whom it has been unable to acquire the necessary easements. Exh. D, O'Higgins Affidavit, ¶37.

Transco has "designed the Sentinel Expansion Project to minimize the impact on landowners, communities, and the environment." Exh. A, FERC Certificate, ¶23. The majority of the Defendants' properties are already burdened by existing easements, and indeed 96 percent of the Sentinel Project's construction area overlaps with Transco's existing easements. FERC, Environmental Assessment, April 18, 2008, ¶90 ("EA").[9] Essentially, Transco is seeking small strips of additional permanent easements adjacent to existing easements. Even though Transco is replacing an existing pipeline, Transco needs additional permanent right of way surrounding Mainline A to comply with pipeline safety standards and prevent future encroachment in this highly developed area of Chester County.

Transco's original right of way in the Downingtown area was acquired in the 1950s, when Chester County was undeveloped farm land. That original easement, as FERC recently described, "now lies in a utility corridor" that includes Transco's Mainlines A, B and C with a fiber optic cable between A and B. Additionally, due to residential growth since the 1950s, "hundreds of residential lots abut the portion of the easement within which the Downingtown Replacement will occur." FERC Order Denying Rehearing and Stay, 126 F.E.R.C. ¶61,097, February 6, 2009 ("Rehearing Order"), ¶4.[10] Transco's existing easement for its three pipelines

---

[9]    FERC issued a Notice of Environmental Assessment on April 18, 2008. 73 Fed. Reg. 22360-01, 2008 WL 1826355 (April 18, 2008). A copy of the complete EA is available at http://ferc.gov/docs-filing/elibrary.asp, Docket No. CP08-31 (April 18, 2008).

[10]    A copy of the Rehearing Order is attached as Exhibit B.

is now as little as five feet from Mainline A, even though the area is considered a "high

consequence area" by FERC:

> For high consequence areas, a pipeline company is required to take
> additional measures beyond those already required by Part 192 of
> DOT's [the Department of Transportation] regulations to prevent a
> pipeline failure and to mitigate the consequences of a pipeline
> failure in a high consequence area. While Transco's Mainline A
> currently complies with all DOT requirements, the additional right-
> of-way proposed by Transco is consistent with DOT's directive
> that pipeline operators enhance their damage prevention programs
> to prevent and minimize the consequences of a release due to third
> party damage in high consequence areas.

Exh. B, Rehearing Order, ¶4.

Based on the dense development in the area and the need to put greater spacing between

the pipelines and residences, FERC specifically upheld Transco's request for increased

permanent easement area in the Downingtown Replacement.  Referring to the EA, FERC found:

> In the EA, Commission staff found that additional permanent right-
> of-way would place a greater distance between the existing
> pipelines and activities that may occur without notice to Transco,
> such as new building construction, landscaping, utility construction
> and maintenance, outbuilding construction, and other unplanned
> digging. The EA concluded that additional permanent right-of-
> way would reduce the risk of third-party damage to the existing
> and proposed pipelines, thereby decreasing the potential for threats
> to the pipeline integrity and the subsequent need for remediation of
> the pipeline.  In addition, natural gas industry best practices advise
> a 25-foot buffer from a pressurized pipeline and encroaching
> development.  **We find that Transco's proposed right-of-way is
> consistent with pipeline industry standards and DOT pipeline
> safety standards.**

Exh. B, Rehearing Order, ¶42 (footnotes omitted, emphasis added).

>   3.   FERC Reviewed and Approved Transco's Project Plans.

In addition to reviewing Transco's requested additional easements, FERC exhaustively

reviewed the environmental impact and potential alternatives to the Sentinel Project and

Downingtown Replacement. Exh. B, Rehearing Order, ¶19.[11]  By its Order of August 14, 2008

granting Transco its Certificate, FERC found "the benefits of Transco's proposed Sentinel

Expansion Project outweigh any potential adverse effects." Exh. A, FERC Certificate, ¶93.

    FERC considered various potential alternatives to the Downingtown Replacement,

including looping a fourth pipeline to the south of Mainline C, replacing Mainline B instead of

Mainline A, and moving Mainline A closer to Mainline B to reduce the amount of additional

permanent right-of-way to the north of Mainline A. Exh. B, Rehearing Order, ¶33. FERC,

however, concluded that, **"the replacement of Mainline A would involve the least**

**environmental disturbance, and result in the most long-term reliability to Transco's**

**natural gas transmission system since Mainline A is the oldest of the three lines."** Exh. B,

Rehearing Order, ¶33 (emphasis added).

    FERC also closely reviewed Transco's proposed pipeline route and construction plan and

analyzed alternatives to the current project plan. FERC found that there were no technically or

environmentally preferable routes, and none that would result in less disruption to development,

since any alternate route would require Transco to establish an entirely new right of way from

previously unaffected landowners. EA, ¶91 (route alternatives "would simply change the

location of potential impact rather than avoid them."). FERC finally concluded the current

Project "would involve the least environmental disturbance," "result in the most long-term

---

[11]     FERC stated that its Environmental Assessment:

> …analyzed construction methods; land and right-of-way requirements; geology
> and soils; water resources and wetlands; vegetation, wildlife and fisheries;
> endangered and threatened species; land use and visual resources; cultural
> resources; air quality and noise; reliability and safety; cumulative impacts; and,
> project alternatives.

reliability to Transco's natural gas transmission system," and that "the Downingtown

Replacement is the environmentally preferred action." Exh. B, Rehearing Order, ¶¶33-34.

>    4.    FERC Conducted an Additional Review and Approved
>           Site-Specific Plans for Rights of Way Within 50 Feet of a
>           Residence.

FERC also required additional review of the pipeline route plans for each property with a

residence within 50 feet of the construction work area. See Exh. A, FERC Certificate, Condition

17 (p.36). Condition 17 applied to 119 properties located along the Downingtown Replacement.

As explained below, Transco has satisfied all requirements of Condition 17, and FERC has

approved these properties for condemnation. Exh. D, O'Higgins Affidavit, ¶¶20-22; Exhs. A

and C.

Condition 17 of the Certificate required that prior to construction of the Downingtown

Replacement, Transco provide:

> ... individual site-specific residential plans to the owner of each
> residence within 50 feet of construction work areas and provide the
> owner one month to review and comment on these plans. Transco
> shall file these plans along with any comments from the property
> owner(s) with the Secretary for review and written approval by the
> Director of OEP. Transco shall identify how it would keep
> residents informed of the progress of construction in the vicinity of
> their respective residences and provide evidence of landowner
> concurrence if construction areas would be located within 10 feet
> of a residence.

Exh. A, FERC Certificate, Condition 17, at 36.

Condition 17 further provided that:

> Transco shall not exercise eminent domain authority under section
> 7(h) of the Natural Gas Act to acquire permanent rights-of-way
> until the required site-specific residential construction plans have
> been reviewed and approved by the Director of OEP [Office of
> Environmental Protection].

Exh. A, FERC Certificate, Condition 17, at 36.

FERC acknowledged that **"by restricting Transco's ability to seek eminent domain until after the approval of site-specific plans, the Commission has given landowners more rights than they otherwise would have had under the NGA certificate."** Exh. B, Rehearing Order, ¶47 (emphasis added). The additional requirements set forth in Condition 17 were initially proposed in the Environmental Assessment. In the EA, FERC stated that implementing the additional layer of review of site-specific residential construction plans, along with Transco's proposed mitigation measures, "would adequately minimize impacts on residences." EA, ¶¶60-61.

Transco fully complied with Condition 17 and its site-specific plans have been approved for construction and condemnation. On October 20, 2008, Transco issued site-specific residential construction plans to all properties with residences within 50 feet of the construction work area.[12] Landowners were given one month to respond and comment on the plans. Transco submitted its site-specific plans along with landowner comments to FERC on December 4, December 12, December 19, 2008 and January 15, 2009. Transco revised some Rights of Way in response to landowner comments and FERC recommendations. FERC reviewed and approved the site-specific plans and released them in groups on January 15, January 30 and February 18, 2009.[13]

---

[12]   Corrected site-specific residential construction plans for five properties were re-submitted to FERC on October 22, 2008, because an error was discovered on the plan sheets. Revised site-specific plans were sent to the owners, and those owners were given three additional days – or by November 24, 2008 instead of November 21, 2008 – to comment and respond to the site-specific plans.

[13]   True and correct copies of FERC's three letter orders approving Transco's site-specific residential construction plans for the Sentinel Project are attached as Exhibit C.

FERC's release and approval means that Transco is free to exercise its power of eminent domain pursuant to Section 7 of the Natural Gas Act.  As FERC explained in the Rehearing Order:

> Under section 7(h) of the NGA [Natural Gas Act], a certificate of public convenience and necessity granted to a natural gas company give that company the right to initiate eminent domain proceedings for the authorized natural gas facilities.  Therefore, without further Commission restrictions, a natural gas company has no limitations placed on its ability to secure the necessary properties through eminent domain.  In the August 14 Order, the Commission required as part of Transco's certificate that it refrain from initiating eminent domain proceedings on individual properties along the Downingtown Replacement until the Commission had approved the site-specific plan for that property.  ... In the absence of the eminent domain limitation set forth in Environmental Condition No. 17, Transco would have been able to seek eminent domain as of the date of the August 14 Order.  Environmental Condition No. 17 places a restriction on Transco by requiring Transco to wait until site-specific plans have been drawn, landowners have commented on the plans, Transco has responded to these comments, and the Director of OEP has approved the plans before Transco may initiate eminent domain proceedings for a property along the Downingtown Replacement.

Exh. B, Rehearing Order, ¶¶47-48.

On February 18, 2009, FERC's Director of OEP approved and released the final site-specific residential construction plans – therefore Condition 17 is fully satisfied.  Accordingly, all restrictions on Transco's power of eminent domain have been lifted.

   5.   <u>Transco's Need for Immediate Access</u>.

Transco has met all conditions set forth in the FERC Certificate for condemnation of the Rights of Way.

Transco must have access to, entry on and possession of the additional permanent right of way and temporary right of way on Defendants' properties **by June 1, 2009,** so that Transco can mobilize construction crews and begin work on these properties **by June 15, 2009.** Based on the

amount of work involved, and the constraints of pipeline construction as described more fully in

the attached affidavit of Brian O'Higgins, Transco must have access to the properties covered by

this Motion by June 1, 2009 to complete the project and provide service through Mainline A by

November 1, 2009. Exh. D, O'Higgins Affidavit, ¶¶38, 67. The Rights of Way are all located in

three segments in which Transco will begin construction with multiple crews that include more

than 425 people. Exh. D, O'Higgins Affidavit, ¶¶48-49. Accordingly, Transco must have access

to the Rights of Way by **June 1, 2009** to begin construction by **June 15, 2009.**

Transco's tight construction schedule is caused by several factors. First, by the very

nature of pipeline construction, a delay in one part of the pipeline will delay the entire

construction schedule. Pipeline construction occurs in sequences, meaning that once

construction starts, the pipeline segments are constructed in sequence across contiguous

properties, and eventually are connected one to the other. A number of different crews can

perform different functions on the section of the pipeline being built, but each crew follows the

one ahead of it from one end of the section to the other. The Downingtown Replacement is an

unusual pipeline project in that it will not be constructed by starting at one end of the 7.15 miles,

with each crew doing its work along the entire line, followed by the next crew. The effect of the

FERC Certificate and particularly Condition 17 is to require that Transco do the work along the

project route in segments in order to minimize disruption to the many residential communities

along the route. Exh. D, O'Higgins Affidavit, ¶¶39-49.

Second, each of the properties with residences within 50 feet of the construction work

area have specific plans which govern the sequence and timing of construction on those

properties, which restrict Transco's ability to conduct construction on those residential

properties. The conditions imposed by FERC through the site-specific residential plans include

specific time limits on the number of days construction may occur on specific residential tracts, special requirements for safety fencing, and limitations on the open trench length in any given residential area, among other things, all of which are additional requirements which Transco must meet in order to install the new Mainline A. The requirements in the residential site-specific plans require the use of multiple small crews in order to meet the conditions imposed by FERC. Exh. D, O'Higgins Affidavit, ¶¶64-66.

Finally, some of the environmental, state and municipal permits impose restrictions on the timing of construction. For example, the Pennsylvania Fish and Boat Commission prohibits construction in certain streams for trout stocking (March 1 to June 15), to protect anadromous fish pathways (April 1 to June 30), and to protect wild trout spawning (October 1 to December 31). Additionally, delays in the planned sequence of work will result in Transco's inability to perform environmental remedial measures until the following spring, or even later, making such remediation less effective. Exh. D, O'Higgins Affidavit, ¶¶59-63.

Transco seeks access to and possession of the properties covered in this Motion by June 1 – rather than by May 4 – because Defendants' properties are located in an area from Creek Road to Norwood Road, which includes several streams in which work can only proceed after June 30, 2009. Exh. D, O'Higgins Affidavit, ¶49.

Accordingly, Transco must have access to the Rights of Way by June 1, 2009 or construction will be delayed and irreparable harm will occur to Transco and the homes and businesses that rely on the delivery of natural gas through Mainline A resuming on November 1, 2009.

6.    <u>Potential Harm to the Public and to Transco</u>.

The Downingtown Replacement is critical to providing additional natural gas capacity to Transco's customers that provide natural gas to homes and businesses in Chester County,

Pennsylvania and throughout the Northeast. Without access to and possession of the Rights of Way by June 1, 2009, Transco will not be able to provide the capacity needed for transmission of natural gas to its existing and additional Project customers. Exh. D, O'Higgins Affidavit, ¶51. Transco's customers have said that without the additional gas capacity from Transco's Sentinel Project, then they would be forced to obtain alternate supply possibly at higher prices. Affidavit of Timothy S. Sherwood, ¶10, which is attached as Exhibit E (hereafter "Pivotal Affidavit"); Affidavit of Andrew M. Franco, ¶9, which is attached as Exhibit F (hereafter "UGI Affidavit"). These additional costs could result in higher costs to homes and businesses and could lead to increased consumption of less-environmentally friendly fuels than natural gas. Exh. E (Pivotal Affidavit), ¶11.

Further, delays in construction could disrupt the schedule of temporary outages in other parts of Transco's system. This means customers may not have sufficient notice of outages to arrange for alternate service and the outages could be required in the fall and winter when demand for natural gas is higher. The Downingtown Replacement requires existing pipeline segments to be temporarily taken out of service while the new pipeline segment can be tied-in, or connected, to the rest of the existing pipeline. A temporary outage requires advance notice to Transco's customers and must be scheduled during historically low usage periods so that the portions of Transco's system that are not taken out of service can adequately handle the demand. Any change in the construction schedule would disrupt Transco's schedule of temporary outages for entire length of the line. Delays in construction also will push some of the construction into the fall and winter, when demand for gas typically increases and when more homes and businesses would be adversely affected by temporary outages. Moreover, if Transco is unable to provide sufficient notice of outages or if the outages occur when demand is increased, then it is

likely that other portions of the pipeline will not be able to handle the increased demand and outages could be longer and cause more disturbance. Exh. D, O'Higgins Affidavit, ¶¶53-57.

Transco has already contracted for the increased capacity of natural gas with seven customers that serve homes and businesses in Pennsylvania, New Jersey, Delaware and New York. These customers need the additional capacity provided by the Sentinel Project by November 1, 2009, to meet the increased needs for natural gas from retail customers. Exh. E (Pivotal Affidavit), ¶¶7-9; Exh. F (UGI Affidavit), ¶¶7-8. If the Sentinel Project is delayed beyond November 1, 2009, Transco's customers would have to find alternate sources of natural gas to meet the needs of homes and businesses during the 2009-10 heating season. Exh. E (Pivotal Affidavit), ¶9; Exh. F (UGI Affidavit), ¶9. Such alternate arrangements likely will increase the cost of gas to homes and businesses that rely on gas service from Transco's transmission lines, and could lead to shortages or limitations on additional gas capacity. There are no economically viable alternatives to the Sentinel Project that could provide the required pipeline capacity in the required timeframe. Exh. E (Pivotal Affidavit), ¶¶10, 12; Exh. F (UGI Affidavit), ¶¶9-10.

A delay in the construction of the Project could lead to increased consumption of heating or process fuels, such as oil or coal. Consumption of these fuels is less-environmentally friendly than natural gas, and as a result it could lower the environmental quality of life in the Mid-Atlantic region. Exh. E (Pivotal Affidavit), ¶11.

Finally, if Transco fails to complete the Downingtown Replacement by November 1, 2009, it will suffer millions of dollars in lost revenue and could incur work suspension charges. If the Downingtown Replacement is not in service by November 1, 2009, Transco will lose approximately $2.1 million per month in revenue. Additionally, Transco is subject to work

suspension charges payable to the construction contractor of up to $191,000 per day beginning on June 15, 2009.  Exh. D, O'Higgins Affidavit, ¶¶73-75.

       7.     <u>Transco Will Post a $1.6 Million Bond to Secure Payment of Compensation</u>.

In this Motion, Transco asks the Court to grant immediate possession of the Rights of Way on Defendants' properties, and leave the issue of just compensation to a later time.  Transco is prepared to file a bond of $1.6 million – or more than five times of the aggregate appraised value of the property rights sought by Transco, or such other amount as the Court deems appropriate.  <u>See</u> Exh. N, Spreadsheet (listing appraised values of Rights of Way).

Transco filed this motion only after extensive negotiations with Defendants.  Transco has been in contact with potentially impacted landowners since 2006, and Transco's land agents have met with or contacted Defendants numerous times beginning in late 2007 and early 2008 to negotiate agreements for easements.  Transco obtained independent appraisals of each of the Rights of Way and has offered each of the Defendants more than the appraised value of the Rights of Way.  Transco has been unable to reach agreement with Defendants.  Transco's extensive negotiations with each of the Defendants are set forth in more detail in the affidavits of Transco's representatives, which are attached in Exhibit O (hereafter "Transco Affidavits").

**II.**    **<u>Transco Has the Right Under Section 717f(h) of the Natural Gas Act to Acquire Easements on Defendants' Properties by Condemnation.</u>**

The Court first must determine that Transco has the substantive right to take easements on the Rights of Way by eminent domain before injunctive relief may be granted.  <u>Steckman Ridge GP, LLC v. An Exclusive Natural Gas Storage Easement Beneath 11.078 Acres, More or Less</u>, Nos. 08-168, 08-169, 08-177, 08-179, 08-180, 2008 WL 4346405, at *12 (W.D. Pa. Sept.

19, 2008)[14]; E. Tenn. Natural Gas Co. v. Sage, 361 F.3d 808, 827-28 (4th Cir. 2004).   Under

Federal Rule of Civil Procedure 65, district courts have jurisdiction to provide equitable relief

when a party has a substantive right, as exists here by virtue of the Certificate granted under the

Natural Gas Act and Transco's complaint in condemnation.   See Franklin v. Gwinnett County

Pub. Sch., 503 U.S. 60, 66 (1992);   Roe v. Operation Rescue, 919 F. 2d 857, 867-68 (3d Cir.

1990) (setting forth the standards for obtaining equitable relief);   Mitchell v. Robert DeMario

Jewelry, Inc., 361 U.S. 288, 291 (1960) ("Unless otherwise provided by statute, all inherent

powers of the District Court are available for the property and complete exercise of [equitable]

jurisdiction.  [T]he court may go beyond the matters immediately underlying its equitable

jurisdiction ... and give whatever other relieve may be necessary under the circumstances.").[15]

The Natural Gas Act sets forth the elements of proof needed to establish a condemnor's

substantive right to acquire property for a FERC-certified natural gas project:

(1)     that a Certificate of Public Convenience and Necessity has been issued by FERC,

(2)     that the natural gas company has been unable to acquire the needed land by
        contract with the owner, and

---

[14]     A copy of this unpublished opinion is attached as Exhibit G.

[15]     The only time courts' equitable powers are limited in any way is when Congress has expressly and
unequivocally limited federal court's power. United States v. Babcock, 250 U.S. 328, 331 (1919) (holding
that court's power to grant equitable relief was restricted by a statute that gave Treasury Department
exclusive and final jurisdiction of soldier's claims for lost property).  This limitation is the exception rather
than the rule.  Absent Congress' "clear and valid legislative command," the full scope of federal court's
equitable power "is to be recognized and applied." Porter v. Warner Holding Co., 328 U.S. 395, 398
(1946).  As the U.S. Supreme Court held in upholding broad equitable powers of the federal courts, "we do
not lightly assume that Congress meant to restrict the equitable powers of the federal courts." Miller v.
French, 530 U.S. 327, 336 (2000).  Indeed, the U.S. Supreme Court has held that Congress need not
reaffirm courts' equitable powers each time it enacts a new piece of legislation, just like it does not
repeatedly incorporate through recitation each existing rule of civil procedure. Deckert v. Independence
Shares Corp., 311 U.S. 282, 287-88 (1940).

(3)     that the value of the property in question is claimed by the landowner to exceed
$3,000.

15 U.S.C. § 717f(h).[16]

Transco easily satisfies these elements:

(1)     Transco has a valid FERC Certificate issued August 14, 2008.  Exh. A.  All of the

plats and plans conform to the pipeline replacement route reviewed and approved by FERC in

the Order of August 14, 2008 and in the site-specific plans approved by FERC, where applicable.

Exh. D, O'Higgins Affidavit, ¶36.  FERC also reviewed and released all site-specific plans for

properties where Transco's construction area is within 50 feet of a residence.  Exh. C; see Exh.

D, O'Higgins Affidavit, ¶¶21-22.  Accordingly, Transco has a valid Certificate of Public

Convenience and Necessity that grants Transco the right to condemn if the remaining elements

are met.

(2)     Transco has tried without success to acquire the necessary easements on

Defendants' property.  Transco's representatives have met with or attempted to meet with all

Defendants numerous times beginning as early as 2006, and made have offers to all Defendants

that are more than the appraised value of the Rights of Way.  Exh. O, Transco Affidavits.

---

[16]     Transco's power of eminent domain is set forth in Section 7(h) of the Natural Gas Act:

> When any holder of a certificate of public convenience and necessity cannot
> acquire by contract, or is unable to agree with the owner of property to the
> compensation to be paid for, the necessary right-of-way to construct, operate,
> and maintain a pipe line or pipe lines for the transportation of natural gas, and
> the necessary land or other property, in addition to right-of-way, for the location
> of compressor stations, pressure apparatus, or other stations or equipment
> necessary to the proper operation of such pipe line or pipe lines, **it may acquire
> the same by the exercise of the right of eminent domain** in the district court
> of the United States for the district in which such property may be located, or in
> the State courts.

15 U.S.C. § 717f(h) (emphasis added).

(3)     Transco has offered $3,000 or more for the easements needed on each of the

Rights of Way, even when the appraised value was much less than $3,000.  Exh. O, Transco

Affidavits.

Thus, Transco has the substantive right to acquire the Rights of Way by eminent domain

for the Downingtown Replacement under the three-part test in the Natural Gas Act.

### III.     Landowners Are Not Permitted to Collaterally Attack the FERC Certificate.

Defendants are not permitted to collaterally attack the FERC Certificate.  After FERC has

issued a Certificate of Public Convenience and Necessity approving an interstate pipeline

project, landowners are permitted only to challenge the *scope* of the federally approved pipeline

project and the *amount of compensation* to be paid for condemnation.[17]  Steckman, 2008 WL

4346405, at *5 ("This Court's role is one of mere enforcement. ... The District Court's sole

charge and authority is to evaluate the scope of the FERC certificate, and order the condemnation

of property in accordance with that scope.");  Kansas Pipeline Co. v. 200 Foot by 250 Foot Piece

of Land, 210 F. Supp.2d 1253, 1256 (D. Kan. 2002) (once FERC issues a Certificate of Public

Convenience and Necessity, "the findings in the FERC certificate are treated as conclusive.");

Tenn. Gas Pipeline Co. v. Mass. Bay Transp. Auth., 2 F. Supp.2d 106, 110 (D. Mass. 1998);

---

[17]     As of April 2, 2009, FERC had denied all petitions seeking to challenge FERC's Certificate of Public Convenience and Necessity on the Sentinel Project, except for two, which were filed after they could be considered by FERC in its denial of the other petitions.  See Exh. B, Rehearing Order.  These pending petitions are irrelevant to these eminent domain proceedings because there is no stay of FERC's Order. Under the Natural Gas Act, filing an application for rehearing with FERC does not, "unless specifically ordered by the Commission, operate as a stay of the Commission's order."  15 U.S.C. § 717r(c); see Tenn. Gas Pipeline Co. v. 104 Acres of Land More or Less, 749 F. Supp. 427  (D.R.I. 1990) (granting motion for immediate possession despite pending request for a rehearing filed by certain landowners); Steckman, 2008 WL 4346405, at *3 (same).  Even the grant of a rehearing does not stay the original FERC Certificate absent FERC's grant of a stay.  Pa. Pub. Util. Comm'n v. Fed. Energy Regulation Comm'n, 881 F.2d 1123, 1125-26 (D.C. Cir. 1989);  In re Permian Basin Area Rate Cases, 390 U.S. 747, 773 (1968) ("the issuance of a stay of an administrative order pending disposition by the Commission of a motion to 'modify or set aside, in whole or in part' the order is a matter committed by the Natural Gas Act to the Commission's discretion.").

Portland Natural Gas Transmission Sys. v. 4.83 Acres of Land, 26 F. Supp.2d 332, 334 (D.N.H. 1998).

The Court may not entertain a collateral attack on the FERC certificate, whether based on, e.g., an alleged lack of notice, absence of due process in the FERC proceedings or failure by the condemnor to comply with the conditions of the FERC certificate.[18] Williams Natural Gas Co. v. City of Okla. City, 890 F.2d 255, 264-66 (10th Cir. 1989), cert. den'd, 497 U.S. 1003 (1990); Steckman, 2008 WL 4346405, at *3-4; see Tacoma v. Taxpayers, 357 U.S. 320 (1958) (failure of an aggrieved party to raise an issue within the scope of FERC jurisdiction on rehearing with the FERC or on direct appeal to the appropriate circuit court of appeal is an insurmountable bar to raising it in a subsequent state judicial proceeding).

Section 717r of the Natural Gas Act provides for the exclusive procedure for challenging a FERC certificate, which is with the Circuit Court. The eminent domain authority granted the district courts under 15 U.S.C. § 717f(h) "does not provide challengers with an additional forum to attack the substance and validity of a FERC order. The district court's function under the statute is not appellate but, rather, to provide for enforcement." Williams, 890 F.3d at 264-66.

The Rights of Way sought on Defendants' properties are within the scope of the Certificate. Transco needs the Rights of Way sought from Defendants to construct, operate and maintain the FERC-approved pipeline. Exh. D, O'Higgins Affidavit, ¶¶31, 35. The Rights of Way on Defendants' properties conform to the pipeline replacement route reviewed and approved by FERC. Exh. D, O'Higgins Affidavit, ¶35. FERC further reviewed and approved site-specific residential construction plans for all Rights of Way subject to Condition 17. See

---

[18]   The Western District of Pennsylvania held that "when a property owner comes to federal court to challenge FERC's findings in the Certificate of Public Convenience and Necessity, the property owned thereby mounts what in essence is a collateral attack on that certificate." Steckman, 2008 WL 4346405 at *5.

Exh. D, O'Higgins Affidavit, ¶35; Exh. C (FERC orders approving site-specific plans); Exh. N

(spreadsheet identifying properties subject to Condition 17).

Transco is ready, willing and able to file a bond in the amount of $1,600,000, or other

amount as the Court orders, to secure the payment of just compensation, once that determination

is made for each of the Rights of Way.

IV.     **This Court is Empowered to Use Its Equitable Power
        to Grant Immediate Possession to Transco Under Fed. R. Civ. P. 65.**

This Court is empowered to use its equitable power to grant immediate possession of the

Rights of Way because Transco has the substantive right to condemn, subject only to the future

determination and payment of just compensation.  Once the Court has made the initial

determination that a pipeline company has the substantive right to condemn property needed to

construct a pipeline under the Natural Gas Act, the Court may then grant immediate possession

and entry onto the property under Federal Rule of Civil Procedure 65.  Steckman, 2008 WL

4346405; see also Columbia Gas Transmission Corp. v. An Easement, No. 05 CV 2895, 2006

WL 401850 (E.D. Pa. Feb. 16, 2006) (granting immediate possession to pipeline company

holding FERC Certificate after satisfying factors for injunctive relief).[19]  A majority of district

courts across the country have similarly granted immediate possession to pipeline companies to

begin construction on federally approved pipeline projects.  E.g.  Sage, 361 F.3d at 827

(collecting cases).

In Steckman, the Western District of Pennsylvania held that it was empowered under

Fed. R. Civ. P. 65 to grant immediate possession to a pipeline company seeking to condemn

easements for a FERC-approved natural gas storage facility in Bedford County, Pennsylvania.

The court stated that the pipeline company had the substantive right to condemn the easements

---

[19]     A copy of this unpublished opinion is attached as Exhibit H.

needed for construction of the storage facility pursuant to the Natural Gas Act, because the company had a FERC Certificate, attempted to obtain the property interests by contract and the property interests were valued at more than $3,000. The court then analyzed whether the company satisfied the elements for injunctive relief to grant immediate possession before the landowners were awarded compensation. The court held that the pipeline company satisfied the elements for an injunction, including demonstrating immediate harm because the company needed to begin construction immediately or it would not finish the project on time. Steckman, 2008 WL 4346405 at *9-12.

Noting that the Third Circuit Court of Appeals had yet to decide this issue, the Steckman court adopted the reasoning set forth by the Court of Appeals for the Fourth Circuit in Sage. Id. at *9-12. In Sage, the defendants-landowners argued that the natural gas company could not take possession prior to the determination of just compensation. 361 F.3d at 831. The defendants also contended that the gas company did not satisfy the requirements for a preliminary injunction. The court disagreed and upheld the district court's decision to grant immediate possession. The court found that without immediate possession, construction would be delayed pending separate condemnation hearings for each of the 85 tracts involved. The court held that waiting for completion of the condemnation would cause the company to breach its contracts with electric generation plants and local gas utilities because the company would not complete construction by certain dates. This would lead to disruptions in gas and electric service to homes and businesses throughout the region. Additionally, the court concluded that the pipeline company would miss the construction deadline in the FERC certificate and would have to repeat the lengthy FERC review process. Ultimately, the court held that the pipeline company would suffer immediate and irreparable harm that warranted an injunction. Id. at 828-29.

The Sage court closely analyzed whether the district court was empowered to use its equitable power to grant immediate possession under the Natural Gas Act. Id. at 820-29. The court found that the gas company had the substantive right to condemnation because of its FERC certificate, therefore the court would not be creating a new right but "giving effect to that right [when] the prescribed legal remedies are inadequate." Id. at 823. Additionally, the court concluded that the Federal Rules of Civil Procedure permitted a gas company to apply for an injunction in a condemnation case. Id. at 822-23 (citing Fed. R. Fed. P. 71A & 65(a)). Rule 71.1 – formerly titled 71A – sets forth the procedure for condemnation of property, and specifically provides that the federal rules apply to any issue not covered by Rule 71.1. Rule 65(a) sets forth the procedure for seeking a preliminary injunction. Under the rules, the court stated, a gas company seeking to condemn property under the federal rules may apply for immediate possession pursuant to Rule 65(a). And even though courts have granted immediate possession to gas companies for more than 25 years, the court noted that Congress has not acted to restrict the availability of Rule 65(a)'s equitable remedy in a condemnation pursuant to the Natural Gas Act. Id.

The majority of courts around the country have followed Sage and used the federal court's equitable power to grant immediate possession to pipeline companies holding valid FERC certificates. Maritimes & Ne. Pipeline, L.L.C. v. 6.85 Acres of Land, 537 F. Supp.2d 223 (D. Me. 2008); Guardian Pipeline, LLC v. 295.49 Acres of Land, Nos. 08-C-0028, 08-C-54, 08-C-29, 08-C-30, 2008 WL 1751358 (E.D. Wisc. April 11, 2008)[20]; Se. Supply Header, LLC v. 180 Acres, C.A. No. 2:07CV280KS-MTP, 2008 WL 160700 (S.D. Miss. Jan. 9, 2008)[21]; Se.

---

[20]   A copy of this unpublished opinion is attached as Exhibit I.

[21]   A copy of this unpublished opinion is attached as Exhibit J.

Supply Header, LLC v. 40 Acres, C.A. No. 2:07CV267KS-MTP, 2007 WL 4459092 (S.D. Miss. Dec. 14, 2007)[22]; E. Tenn. Natural Gas, LLC v. 3.62 Acres, Civ. Action No. 4:02cv00197, 2006 WL 1453937, at *14 (W.D. Va. May 18, 2006).[23]

Even before Sage, courts overwhelmingly followed similar reasoning and granted immediate possession to pipeline companies holding FERC certificates. Williston Basin Interstate Pipeline Co. v. Easement and Right of Way Across .152 Acres of Land, No. A1-03-66, 2003 WL 21524816 (D.N.D. June 3, 2003)[24]; Nw. Pipeline Corp. v. 20' by 1,430' Pipeline Right of Way, 197 F. Supp.2d 1241, 1246 (E.D. Wash. 2002); Guardian Pipeline, LLC v. 950.80 Acres of Land, 210 F.Supp.2d 976, 979 (N.D. Ill. 2002); Vector Pipeline v. 68.55 Acres of Land, 157 F.Supp.2d 949 (N.D. Ill. 2001); N. Border Pipeline Co. v. 64.111 Acres of Land, 125 F. Supp.2d 299, 301 (N.D. Ill. 2000) (granting immediate possession and citing significant financial damages that could not be recovered from the defendants); Humphries v. Williams Natural Gas Co., 48 F.Supp.2d 1276, 1280 (D. Kan. 1999); Tenn. Gas Pipeline Co. v. New England Power, CTL, Inc., 6 F. Supp.2d 102, 104 (D. Mass. 1998) (using the court's "equitable power to grant immediate entry and possession where such relief is essential to the pipeline construction schedule."); Portland Natural Gas, 26 F. Supp.2d at 336 (upholding prior order granting immediate possession to gas company); USG Pipeline Co. v. 1.74 Acres, 1 F. Supp.2d 816, 825-26 (E.D. Tenn. 1998); Rivers Elec. Co., Inc. v. 4.6 Acres of Land, 731 F. Supp. 83 (S.D. N.Y. 1990); Kern River Gas Transmission v. Clark County, Nev., 757 F. Supp. 1110 (D.

---

[22]     A copy of this unpublished opinion is attached as Exhibit K.

[23]     A copy of this unpublished opinion is attached as Exhibit L.

[24]     A copy of this unpublished opinion is attached as Exhibit M.

Nev. 1990);  N. Border Pipeline Co. v. 127.79 Acres of Land, 520 F. Supp. 170, 172-73 (D.N.D. 1981).[25]

This Court may exercise its equitable power to grant Transco immediate possession of the Rights of Way just as dozens of courts have done around the country, including the Western District of Pennsylvania in Steckman, the Eastern District of Pennsylvania in Columbia Gas Transmission and the Court of Appeals for the Fourth Circuit in Sage.

**V.      Transco is Entitled to a Preliminary Injunction Granting Immediate Possession to the Rights of Way.**

Transco satisfies the Third Circuit standard for injunctive relief and, therefore, this Court may grant Transco immediate access of and possession to the Rights of Way.  In the Third Circuit, a party seeking a preliminary injunction must show:

    (i)      the likelihood that the moving party will succeed on the merits;

---

[25] The Courts of Appeals for the Seventh Circuit and Ninth Circuit have denied motions for immediate possession pursuant to a FERC certificate on the basis that the plaintiff-pipeline company failed to demonstrate a substantive right to condemn.  Transwestern Pipeline Co., LLC v. 9.32 Acres, 550 F.3d 770, (9th Cir. 2008); N. Border Pipeline Co. v. 86.72 Acres of Land, 144 F.3d 469 (7th Cir. 1998).  Both cases are factually distinguishable and legally consistent with this Motion, though, because Transco through this Motion has demonstrated a substantive right to condemn.  In Transwestern, the plaintiff sought an injunction granting immediate possession for land necessary for a FERC-approved pipeline.  The district court held that it was not authorized to grant immediate possession under its equitable power absent proof that the plaintiff had the substantive right to condemn.  Transwestern, 550 F.3d at 773-74.  The Circuit Court affirmed.  But the appellate court held that *if* the plaintiff satisfied the three elements set forth in the Natural Gas Act, *then it would have* the substantive right to condemn and the district court was authorized to use its equitable power to grant the requested injunctive relief.  Transwestern, 550 F.3d at 776, 777-78.  Similarly, in Northern Border, the court held that the gas company must demonstrate a "substantive entitlement" to the defendants' land before immediate possession can be granted.  144 F.3d at 471.  Although the court denied the plaintiff's motion for immediate possession in Northern Border, district court decisions since then have granted immediate possession after first finding a substantive right to condemn.  Guardian Pipeline, LLC v. 295.49 Acres of Land, 2008 WL 175358, at *20-21 (granting immediate possession on a mere showing of "some likelihood of success on the merits.") (a copy is attached as Exhibit J); Guardian Pipeline, LLC v. 950.80 Acres of Land, 210 F. Supp.2d at 979 (granting immediate possession after district court has ordered condemnation of easements but prior to compensation proceedings); Vector Pipeline, 157 F. Supp.2d 949;  N. Border Pipeline Co. v. 64.111 Acres of Land, 125 F. Supp.2d at 301 (granting immediate possession following condemnation proceeding but prior to more time-consuming hearings setting just compensation).  Here, Transco has demonstrated the substantive right to condemn – distinguishing it from the plaintiffs in Transwestern and Northern Border.  As demonstrated in Section II, *infra*, Transco satisfies the three elements of the Natural Gas Act, which the Court of Appeals for the Ninth Circuit held was sufficient to confirm a substantive right to condemn.  Accordingly, these decisions are factually distinguishable and, indeed, legally consistent with Transco's current motion.

(ii)    the extent to which the moving party will suffer irreparable harm without injunctive relief;

(iii)    the extent to which the nonmoving party will suffer irreparable harm if the injunction is issued; and

(iv)    the public interest favors such relief.

Rogers v. Corbett, 468 F.3d 188, 192 (3d Cir. 2006).  Courts should balance these factors to determine if an injunction is appropriate.  Allegheny Energy, Inc. v. DQE, Inc., 171 F.3d 153, 158 (3d Cir. 1999).

The balance of the factors favors Transco, therefore injunctive relief is appropriate.

1.     Transco is Likely to Succeed on the Merits.

Transco will succeed on the merits of its condemnation claim.  The court in Steckman held that this element is satisfied once the pipeline company establishes its right to exercise eminent domain under the Natural Gas Act over all of the subject properties of Defendants in accordance with the FERC Certificate of Public Convenience and Necessity.  2008 WL 4346405 at *15.  As demonstrated above, Transco satisfies the three elements set forth in Section 7 of the Natural Gas Act.  15 U.S.C. § 717f(h).  Accordingly, this element supports granting immediate possession to Transco.

2.     Transco Will Be Irreparably Harmed.

Without access to, entry on and possession of the Rights of Way by June 1, 2009, construction will be delayed, Transco will not be able to complete the Downingtown Replacement by November 1, 2009,  and Transco and the public will suffer irreparable harm.

Courts in Pennsylvania and around the country have agreed that construction delays in building interstate pipelines constitute immediate and irreparable harm that outweighs any monetary damages claimed by landowners.  See, e.g., Steckman, 2008 WL 4346405 at *15;  E. Tenn. Natural Gas, LLC v. 3.62 Acres, 2006 WL 1453937, at *14  (granting immediate

possession and citing possible gas outages and estimated $5.4 million in damages if construction is halted during completion of condemnation process); N. Border Pipeline Co. v. 64.111 Acres of Land, 125 F. Supp.2d at 301 (granting immediate possession and citing significant financial damages that could not be recovered from the defendants). Specifically, in Steckman, the Western District of Pennsylvania found that without immediate possession, the pipeline company would not be able to comply with the FERC Certificate to complete construction on time. The court concluded that "[plaintiffs], its customers and the general public will be irreparably harmed if [plaintiffs are] not granted immediate possession of the Defendants to perform the construction set forth in the FERC certificate of public convenience and necessity." Steckman, 2008 WL 4346405 at *16.

As in Steckman, and the plethora of cases cited in this brief, Transco cannot wait to obtain possession and access to the Rights of Way until after condemnation and compensation hearings are held for all 20 landowners. Such hearings could take months – a delay that Transco cannot afford. To complete construction by November 1, 2009 – as required by Transco's service contracts and by the FERC Certificate – Transco must obtain possession and access to the Rights of Way by June 1, 2009. Exh. D, O'Higgins Affidavit, ¶¶38, 67. The Downingtown Replacement is critical to the entire Project because it involves the shut down and replacement of Mainline A. Exh. D, O'Higgins Affidavit, ¶¶11, 50. Delays in construction will affect temporary outages, which require advanced notice to Transco's customers and must be scheduled during low usage periods so that Transco's other lines can adequately handle demand. Delays in the construction schedule will disrupt Transco's schedule of temporary outages and could push construction into the fall and winter when demand for natural gas typically increases and when Transco's existing lines cannot satisfy demand. Exh. D, O'Higgins Affidavit, ¶¶53-

57. Accordingly, if construction is delayed, Transco will not be able to provide the capacity needed for transmission of natural gas to its existing and additional customers. Exh. D, O'Higgins Affidavit, ¶51.

Transco's customers have said that if Transco is not able to provide the full capacity of the Sentinel Project by November 1, 2009, then homes and businesses in the Northeast may pay more for natural gas this winter heating season. Exh. E (Pivotal Affidavit), ¶10; Exh. F (UGI Affidavit), ¶9. If Transco is unable to meet the November 1, 2009 in-service date, then Transco's customers likely will have to find alternate sources of natural gas to meet the needs of homes and businesses seeking new or increased gas service as well as existing retail customers who already rely on Transco's transmission lines for natural gas. Exh. E (Pivotal Affidavit), ¶10; Exh. F (UGI Affidavit), ¶9. Such alternate arrangements likely will increase the cost of natural gas to the homes and businesses. Exh. E (Pivotal Affidavit), ¶10; Exh. F (UGI Affidavit), ¶9.

Finally, delays in construction may result in environmental damages and severe financial consequences to Transco. Delays in the work schedule will increase the potential for additional damage to the terrain if construction occurs in wet soil conditions. Transco also may not be able to complete remediation, including soil erosion and sedimentation control, wetlands disturbance, stream crossing and street opening, which are required in the FERC Certificate. Exh. D, O'Higgins Affidavit, ¶¶62-63. Additionally, Transco will lose $2.1 million per month in revenue if the Project is not in service by November 1, 2009, and may be liable for work suspension charges of up to $191,000 per day if construction does not begin by June 15, 2009. Exh. D, O'Higgins Affidavit, ¶¶75-77.

Transco, therefore, has certainly demonstrated irreparable harm that cannot be compensated by money damages sufficient to grant Transco a preliminary injunction for possession of the Rights of Way by June 1, 2009.

>    3.    <u>Defendants' Harm Can Be Remedied With Money Damages</u>.

In contrast to the significant financial harm and construction delays that Transco will suffer, any damages to Defendants' property can be compensated with money as determined during condemnation hearings.

Across the country, courts considering motions for immediate possession have found that landowners' interests are adequately protected by the condemnation proceeding, and that the equities favor immediate possession.  <u>See, e.g.</u>, <u>Sage</u>, 361 F.3d at 825 (noting that landowners will be adequately compensated for the value of the property and any damages, and that immediate possession does not give the gas company permanent title until after compensation is paid); <u>USG Pipeline Co.</u>, 1 F. Supp.2d at 825-26 (granting immediate possession because even if FERC Certificate is overturned upon review by FERC or some other court with proper jurisdiction, the defendants' property could be restored substantially to the condition it was prior to gas company's intrusion and landowner could seek damages in trespass).  Indeed, the two Pennsylvania district courts that have considered the issue have held that the defendant-landowners have an adequate remedy at law to obtain money damages.  <u>Steckman</u>, 2008 WL 4346405 at *16 (any harm to the landowners as a result of the immediate possession is "slight at best" and can readily be compensated for from the bond amount that the plaintiffs were required to pay into the Court); <u>Columbia Gas</u>, 2006 WL 401850, at *3 (harm to the pipeline company outweighed any harm to the landowner).

Here, Transco is proposing to post a bond with the Court for $1.6 million, which is adequate to cover more than three times the estimated just compensation for the Rights of Way

sought on Defendants' properties, or such other amount as the Court deems appropriate. Thus, any money damages due to Defendants are secure. Moreover, FERC approved the Sentinel Project and specifically balanced the impact on landowners of Transco's planned pipeline project. FERC determined that many of the homes present along the proposed replacement pipeline are already adjacent to Transco's existing right-of-way. According, FERC concluded that expansion of Transco's existing property rights "would not result in significant impacts to land value." Exh. A, FERC Certificate, ¶57. "Since the affected lands abut a long established natural gas pipeline corridor, **we believe that the use of this land, whether on a temporary or permanent basis, should not significantly impact the overall land value."** Exh. A, FERC Certificate, ¶57 (emphasis added).

Thus, the balance of the harms weighs in favor of Transco.

        4.      The Public Interest Supports Granting Immediate Possession.

Granting immediate possession would support the public interest, because this pipeline would provide additional natural gas capacity to meet increased demand in Pennsylvania and the Northeast. There is substantial public interest – the need for natural gas supply – at stake in this case. The U.S. Supreme Court has said that courts of equity may got to greater lengths to give relief in furtherance of the public interest than they might go when only private interests are involved. Sage, 361 F.3d at 823-27 (quoting Va. Ry. Co. v. Sys. Fed'n No. 40, 300 U.S. 515, 552 (1937)). Indeed, Pennsylvania and other courts around the country have found a strong public interest in constructing and operating interstate pipelines. Steckman, 2008 WL 4346405 at *17 (holding that issuance of the FERC certificate is evidence that the project is in the public interest); Columbia Gas, 2006 WL 401850, at *3 (granting immediate possession because interstate pipeline service was in the public interest); see, e.g., Sage, 361 F.3d at 830; Nw. Pipeline Corp., 197 F. Supp.2d at 1246 (granting immediate possession because the new pipeline

would allow for a "vital" improvement to a nearby road); N. Border Pipeline Co., 125 F. Supp.2d

at 301 ("granting plaintiff immediate possession of the property is in the public interest as it will

enable the gas companies ... to meet the requirements of the ... winter heating season." (internal

quotation marks omitted)).

Here, FERC has already declared that "the benefits of Transco's proposed Sentinel

Expansion Project outweigh any potential adverse effects" and that "the proposed project is

required by the public convenience and necessity." Exh. A, ¶93.  FERC further stated that the

Sentinel Project was necessary to provide expanded transmission lines to meet the increased

needs for natural gas service of hundreds of thousands of homes and businesses in Delaware,

Pennsylvania, New Jersey and New York.  Exh. A, ¶24.

Additionally, as described above, without possession by June 1, 2009, Transco will not

be able to provide the capacity needed for transmission of natural gas to its existing and

additional customers.  Exh. D, O'Higgins Affidavit, ¶51.  Transco's customers have said that

without the additional gas capacity from Transco's Sentinel Project, then they would be forced to

obtain alternate supply at higher prices.  Exh. E (Pivotal Affidavit), ¶10;  Exh. F (UGI Affidavit),

¶9.  These additional costs could result in higher costs to homes and businesses, Exh. F (UGI

Affidavit), ¶9, and could lead to increased consumption of less-environmentally friendly fuels

than natural gas.  Exh. E, Pivotal Affidavit, ¶¶10-11.

Accordingly, this factor weighs in favor of granting immediate possession.

**VI.    Conclusion.**

For the reasons set forth above, Transcontinental Gas Pipe Line Company, LLC

respectfully requests that this Court (1) determine that Transco has the substantive right to

condemn the Rights of Way on Defendants' properties, (2) grant Transco immediate access to,

entry on and possession of the Rights of Way, before the award of just compensation, and (3)

grant Transco's Motion in the form of the proposed orders filed concurrently with this Motion

and attached as Exhibit P.

Respectfully submitted,

*Elizabeth U. Witmer*

Elizabeth U. Witmer
James G. Rosenberg
Jennifer B. Bonniwell
Sean T. O'Neill
SAUL EWING LLP
1200 Liberty Ridge, Suite 200
Wayne, PA 19087-5569

*Attorneys for Plaintiff*
*Transcontinental Gas Pipe Line*
*Company, LLC*

Dated: April 2, 2009